UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON HOLE BURGER, INC.,<br><br>            Plaintiff,<br><br>    -v-<br><br>THE ESTATE OF STEVEN GALEKOVIC,<br>BRIELLE GALEKOVIC,<br><br>            Defendants. | 23-cv-04922 (JSR)<br><br>OPINION |

JED S. RAKOFF, U.S.D.J.:

On May 16, 2023, plaintiff, Jackson Hole Burger, Inc. ("Jackson Hole"), filed a complaint in New York State court asserting a variety of state law claims against defendants, the estate of Steven Galekovic ("the estate") and Brielle Galekovic ("B. Galekovic") arising from an agreement between Steven Galekovic ("Mr. Galekovic") and plaintiff, a settlement agreement of a wage-and-hour lawsuit, and Mr. Galekovic's obligations as a shareholder of the corporation. See Compl., Dkt. No. 3. On June 12, 2023, defendants removed the action to federal court. See Notice of Removal, Dkt. No. 1.

On June 26, 2023, plaintiff moved to remand the case to state court, and defendants cross-moved to disqualify plaintiff's counsel, Konstantine Paschalidis, Esq., and to impute the alleged conflict to Mr. Paschalidis's firm, Brach Eichler LLC. After full consideration of the parties' written submissions and oral argument, the Court denied

1

plaintiff's motion by "bottom-line order" dated July 7, 2023 and granted defendants' motion by "bottom-line order" dated July 10, 2023. This Opinion sets forth the reasons behind those rulings.

I. Plaintiff's Allegations

Plaintiff is a New York corporation that operates a restaurant, named Jackson Hole, on Third Avenue in Manhattan. Compl., ¶¶ 8, 14-16. Mr. Galekovic was an operational manager at the restaurant. Id. ¶ 22. In 1987, Mr. Galekovic entered into an agreement (the "Agreement") with plaintiff to purchase an interest in the corporation over the course of several years. Id. ¶¶ 23-24. So long as Mr. Galekovic was employed at Jackson Hole, he "was entitled to the rights available as a shareholder in [Jackson Hole] with a fifteen (15%) interest." Id. ¶ 30. But, if Mr. Galekovic fully paid for the shares (which he did) and then died (which occurred on July 10, 2021), "his successor(s) were required to return his shares" to the corporation "without payment." Id. ¶¶ 31, 42, 47.

Soon after Mr. Galekovic's death, B. Galekovic, administrator of the estate, reached out to plaintiff's shareholders about Mr. Galekovic's shares. Id. ¶ 48. In response, plaintiff demanded the return of Mr. Galekovic's shares, but B. Galekovic refused. Id. ¶ 53. In addition, B. Galekovic was informed that Mr. Galekovic owed contributions to plaintiff, including for the settlement of a wage and hour dispute (the "Velasquez action"). Id. ¶ 52. Plaintiff's current lawyer, Mr. Paschalidis, represented both Mr. Galekovic and plaintiff in the Velasquez action.

II.  Plaintiff's Claims

Plaintiff asserts a variety of state-law causes of action. Counts One and Two assert breach of contract and conversion, respectively, for failure to return Mr. Galekovic's shares in accordance with the Agreement. Compl., ¶¶ 64-78. Count Three asserts an unjust enrichment claim against defendants for improperly keeping Mr. Galekovic's shares. Id. ¶¶ 79-86. Count Four asserts a claim for contribution based on Mr. Galekovic's failure to pay his pro rata share of the Settlement Agreement of the Velasquez action ("Velasquez Settlement Agreement"). Id. ¶¶ 87-105. Count Five asserts a claim for statutory contribution under N.Y. B.C.L. § 630 toward the Velasquez Settlement Agreement and employees' salaries and wages. Id. ¶¶ 106-115. Count Six asserts a claim for breach of fiduciary duty based on defendants' failure to contribute Mr. Galekovic's pro-rata share to capital calls. Id. ¶¶ 116-130. Count Seven seeks to impose a constructive trust on Mr. Galekovic's shares. Id. ¶¶ 131-136. Count Eight requests an injunction, seeking the return of Mr. Galekovic's shares. Id. ¶¶ 137-142. Count Nine requests declaratory relief, seeking a declaration that plaintiff owns the shares and that Mr. Galekovic has no right to the brand or name usage of the corporation. Id. ¶¶ 143-152. Count Ten requests specific performance, seeking the return of Mr. Galekovic's shares. Id. ¶¶ 153-159.

III.  Motion to Remand

28 U.S.C. § 1441(a) permits a defendant to remove a case from state to federal court, in "the district and division embracing the

place where [the] action is pending" if the district court would "have original jurisdiction" over the action. The jurisdictional basis invoked here is diversity jurisdiction. In relevant part, that requires (1) "citizens of different States" and (2) an amount in controversy that exceeds $75,000. See 28 U.S.C. § 1332(a). "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states," the Court "must resolve any doubts against removability." In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007).[1] Plaintiff argues the predicates for diversity jurisdiction are not met, and the case should be remanded back to state court.

The parties do not contest that the first requirement of diversity jurisdiction is met. Plaintiff is a citizen of New York because it is incorporated in New York and has its principal place of business in New York. See 28 U.S.C. § 1332(c)(1); Compl., ¶ 8. Defendants, the estate and B. Galekovic in her capacity as administrator, are citizens of New Jersey because at the time of his death, Mr. Galekovic was a resident of New Jersey. See Compl., ¶ 10; 8 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"); Johnson v. Smithsonian Inst., 80 F. Supp. 2d 197, 199 (S.D.N.Y. 2000) (reasoning the relevant citizenship for purposes of diversity is the citizenship of the decedent at the time of death), aff'd, 4 F. App'x 69 (2d Cir.

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

2001). And, defendant B. Galekovic, in her individual capacity, is a citizen of California. Compl., ¶ 11. There is thus complete diversity of citizenship.

The sole contested issue is whether the amount in controversy exceeds $75,000. Defendants, as the removing parties, bear the burden of "proving that it appears to a reasonable probability that the claim is in excess of $75,000." Bellocchio v. Enodis Corp., 499 F. Supp. 2d 254, 255 (E.D.N.Y. 2007) (quoting United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 303-04 (2d Cir. 1994)). But "if the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." Lupo v. Human Affs. Int'l, Inc., 28 F.3d 269, 273-74 (2d Cir. 1994).

The complaint does not allege a specific amount of damages that is being sought. Rather, Counts One, Two, Four, Five, and Six state that the damages being sought are greater than "the minimum threshold of this Court," meaning the damages on those claims are greater than the minimum threshold of the Supreme Court of New York where the complaint was originally filed. See Compl., ¶¶ 70, 78, 105, 115, 130. But there is no minimum damages threshold for the Supreme Court of New York to have jurisdiction. See N.Y. Jud. Law § 140-b; Citibank, N.A. v. Swiatkoski, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) ("The New York

5

State supreme courts are courts of general jurisdiction."); Kagen v. Kagen, 21 N.Y.2d 532, 537 (1968) ("the Supreme Court is a court of original, unlimited and unqualified jurisdiction"). Although in practice the New York Supreme Court "generally hears cases that are outside the jurisdiction of the other trial courts of more limited jurisdiction,"[2] which in New York City, is now $50,000, see N.Y. Const. art. VI, § 15(b), finding that a reference to "the minimum threshold" of the Supreme Court of New York really means $50,000 would require drawing tenuous inferences that are not clearly stated. Since any doubts must be construed against removability, the Court finds the damages alleged in the complaint are insufficient to meet the amount in controversy requirement.

However, the notice of removal does state that plaintiff is seeking "the return of st[o]ck certificates valued at $125,000." See Notice of Removal, at 2, Dkt. No. 1. Plaintiff contends this allegation is insufficient because the amount in controversy must be assessed from plaintiff's perspective, see Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir. 1972), and from that perspective, the shares are worth $0 because plaintiff has the right to receive the shares back without paying any money, see Ex. 1, ¶ 9(B), Dkt. No. 10.

The Court disagrees with plaintiff's position. As relevant here, Count Eight requests an injunction requiring defendants to return the shares, and Count Nine requests a declaratory judgment that plaintiff

---

[2] See *Supreme Court, Civil & Criminal Terms*, New York State Unified Court System, https://www.nycourts.gov/courts/cts-NYC-SUPREME.shtml (last visited Aug. 9, 2023).

6

is "the sole, rightful, and legal owner" of the shares. Compl., ¶¶ 139, 151. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769 (2d Cir. 2006). The best evidence of the stock's value is the provision of the Agreement stating the shares were purchased for $125,000. Ex. 1, ¶ 2, Dkt. No. 10 ("The purchase price for the shares shall be . . . $125,000."). The best evidence is not plaintiff's right to receive the shares back without payment. It is, at best, illogical to conclude that shares of a business are worth $0 just because plaintiff has the right to receive the shares without paying any money for them. Unless the corporation is defunct (and there is no evidence on this record that it is), the shares must have some monetary value to plaintiff. Further to the point, if the shares were actually worth $0 from plaintiff's perspective, it would be unclear why plaintiff is even suing to seek the return of worthless stock. The notice of removal thus contains sufficient facts to meet the amount in controversy requirement.

In sum, both requirements for diversity jurisdiction are met. The Court accordingly denies the motion to remand.

IV. Motion to Disqualify

Defendants contend that plaintiff's lawyer, Mr. Paschalidis, should be disqualified and that the conflict should be imputed to Mr. Paschalidis's firm, Brach Eichler.

a. <u>Disqualification of Mr. Paschalidis</u>

An attorney must be disqualified if three elements are met: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his representation of the client." <u>United States v. Prevezon Holdings Ltd.</u>, 839 F.3d 227, 239 (2d Cir. 2016) (quoting <u>Evans v. Artek Sys. Corp.</u>, 715 F.2d 788, 791 (2d Cir. 1983)). "Generally" if these three factors "are satisfied, trial taint is established and no further analysis is necessary." <u>Id.</u> at 241.

The parties do not dispute element one. The parties appear to agree that Mr. Paschalidis represented and defended both Jackson Hole (plaintiff in this lawsuit) and Mr. Galekovic (the decedent whose estate is a defendant in this lawsuit) previously in <u>Velasquez et al. v. P.J.C.M. Restaurant Corp. et al.</u>, No. 1:15-cv-03602-WHP. <u>See</u> Defs. Mot. to Disqualify, Ex. A, Dkt. No. 9.

The parties, however, dispute whether element two is satisfied. There is a substantial relationship "when the relationship between the issues in the prior and present cases is patently clear . . . [and when] the issues involved have been 'identical' or 'essentially the same.'" <u>Gurniak v. Emilsen</u>, 995 F. Supp. 2d 262, 272 (S.D.N.Y. 2014). "A substantial relationship exists where facts pertinent to the

8

problems underlying the prior representation are relevant to the subsequent representation." Prevezon Holdings, 839 F.3d at 239. For "[i]t is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010) (quoting United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1460 n.26 (S.D.N.Y. 1985)).

There is a substantial relationship between the present lawsuit and the Velasquez action. Count Four is premised on the Velasquez action, as evidenced by the fact the Velasquez action is explicitly referenced by case number and name in the complaint. See Compl., ¶¶ 87-105. Furthermore, Count Four and Count Five claim defendants owe plaintiff for the payment of Mr. Galekovic's pro rata share of the Velasquez Settlement Agreement under different legal theories for contribution. See id. ¶¶ 87-115.

Plaintiff argues that these claims are unrelated to the lawsuit from which the Velasquez Settlement Agreement arises, as that lawsuit alleged violations of the Fair Labor Standards Act ("FLSA") and various New York laws for a variety of unfair labor practices.[3] That is without

---

[3] Specifically, in Velasquez, the defendants were sued by numerous employees for (1) violating the minimum wage provisions of the FLSA; (2) violating the overtime provisions of the FLSA; (3) violating the New York Minimum Wage Act; (4) violating the overtime provisions of the New York Labor Law ("NYLL"); (5) violating the spread of hours wage order of the New York Commissioner of Labor; (6) violating the notice and recordkeeping requirements of the NYLL; (7) violating the wage statement provisions of the NYLL; (8) violating the NYLL by making unlawful deductions from tips; and (9) unpaid equipment costs. See Pl.'s Mem. Of Law in Opp. to Defs. Mot. to Disqualify, Ex. 1, Dkt. No. 14.

merit. There is definitionally factual overlap and similarity between the present lawsuit and the Velasquez action, when the present lawsuit pursues claims arising from the settlement of the Velasquez action.

The parties also dispute whether element three is satisfied. But, "[o]nce a substantial relationship between the cases is established, 'where the same individual lawyer participated in the prior and current representation, . . . the movant is entitled to the benefit of an irrebuttable presumption that confidences were shared.'" Prevezon Holdings, 839 F.3d at 240. Given this irrebuttable presumption, plaintiff's evidence that confidences were not shared is irrelevant. Element three is also satisfied.

The Court acknowledges that motions for disqualification can be used for tactical reasons, see Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir. 1983); Bd. of Educ. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), and that the Court must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession," Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005). But, here, Mr. Pachalidis took on a lawsuit that was plainly related to his earlier representation of both plaintiff and Mr. Galekovic. The Court accordingly finds that Mr. Paschalidis is disqualified from this action.

b. Imputation of the Conflict to Brach Eichler LLC

The last issue is whether Mr. Paschalidis's conflict should be imputed to his firm, Brach Eichler. "An attorney's conflicts are

ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences" but "the presumption that confidences are shared within a firm" is rebuttable. Hempstead Video, 409 F.3d at 133. "When evaluating whether this presumption of shared confidences has been rebutted, '[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint.'" Victorinox AG v. The B&F Sys., Inc., 200 F. Supp. 3d 423, 426 (S.D.N.Y. 2016).

The Court notes that Mr. Paschalidis is "of counsel" at Brach Eichler. And an "of counsel" attorney's conflicts are not always imputed to his firm -- it depends on "the substance of the relationship under review and the procedures in place." Hempstead Video, 409 F.3d at 135. In these circumstances, imputation is more appropriate when an "of counsel" lawyer has a "closer and broader . . . affiliation . . . with the firm" and "operating procedures . . . may permit one to become privy, whether intentionally or unintentionally, to the pertinent client confidences of the other." Id. It is less appropriate when the "of counsel" lawyer has a "narrowly limited . . . relationship" with the firm and "the more secure and effective isolation of nonshared matters." Id.

Although Mr. Paschalidis is "of counsel," there was no indication he had a narrow relationship with Brach Eichler. See 7/7/23 Hr'g Tr. at 4:7-23. Furthermore, there is no evidence that any screening measures were put into place at Brach Eichler. See id. at 4:24-5:15. And regardless, any screening at this point would be completely

11

ineffective, given how involved Mr. Paschalidis has already been in the present lawsuit. See Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 278 (S.D.N.Y. 2004) ("implementing a screening procedure to separate [the attorney] from the rest of [the firm] now would be bootless because [the lawyer] has already been substantially involved in this matter."). Accordingly, the Court finds that imputation is appropriate.

V.  Conclusion

The Court denies the motion to remand the case to state court, and the Court grants the motion to disqualify Mr. Paschalidis and Brach Eichler.

SO ORDERED.

New York, NY
August 10, 2023

JED S. RAKOFF, U.S.D.J.